# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

In Re: Don Karl Juravin

DON KARL JURAVIN and
ANNA JURAVIN,

      Appellants,

v.                                                     Case No:   5:24-cv-597-GAP

BELLA COLLINA PROPERTY
OWNERS ASSOCIATION, INC and
DENNIS D. KENNEDY,

      Appellees

---

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court without oral argument on appeal from the United States Bankruptcy Court for the Middle District of Florida.[1] *Pro se* Appellants Don Karl Juravin ("Mr. Juravin" or "Juravin") and Anna Juravin ("Mrs. Juravin" or "Anna"; collectively, "the Juravins") appeal the Bankruptcy Court's Memorandum Opinion, Final Judgment, and related Orders dated

---

[1] This appeal arises from the following Bankruptcy Court cases: 6:18-bk-6821-LVV; 6:20-bk-1801-LVV; and 6:21-ap-103-LVV (which is consolidated with 6:21-ap-141-LVV; 6:21-ap-142-LVV; 6:22-ap-16-LVV; 6:22-ap-19-LVV; and 6:22-ap-20-LVV).

September 30, 2024. With the parties' briefing complete (Docs. 24, 34, & 39) and the record supplemented (Doc. 50), the matter is ripe for disposition.

**I.     Background**

In its Memorandum Opinion, the Bankruptcy Court ordered the Juravins' pleadings and affirmative defenses stricken and entered final default judgments (primarily) in favor of Appellees Bella Collina Property Owner's Association, Inc. ("Bella Collina") and Chapter 7 Trustee Dennis D. Kennedy ("Kennedy"; collectively, "Appellees") in the Juravins' cases—as means of sanctioning them for failing to comply with its orders and directives pursuant to Federal Rule of Civil Procedure ("Rule(s)") 16(f) (and Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7016). Doc. 1-2 at 1-34. [2] The Bankruptcy Court's corresponding Final Judgment specifically revoked Mr. Juravin's discharge and entered default judgment against Mrs. Juravin in the amount of $181,000 (among other things).[3] *Id.* at 35-38.

The Bankruptcy Court's summary of its reasoning states:

> The integrity of the judicial process requires participation and cooperation of all parties. When cooperation does not exist, the system

---

[2] The Juravins' appendix fails to comply with Bankruptcy Rule 8018(b)(1), as it includes only one transcript. *See* Doc. 24-1. Thus, the Court cites to the copies of the Memorandum Opinion, Final Judgment, and related Orders that were included with the Juravins' Notice of Appeal. *See* Doc. 1-2.

[3] Although the Bankruptcy Court issued a thorough thirty-four-page Memorandum Opinion and detailed Final Judgment, the finer details of the Bankruptcy Court's holdings are not

> breaks down. Various rules of procedure and common law [have] been developed to provide a mechanism for requiring cooperation. Usually the threat of monetary sanctions works and sometimes it does not. While courts prefer to decide disputes based on the merits there are times when a party's conduct makes that impossible and the court must take drastic action to ensure justice is had. This is one of those times.
>
> [The Juravins] have repeatedly failed to comply with this Court's orders and directives, have resisted [Appellees'] attempts to take discovery, have filed meritless pleadings and taken frivolous positions thereby delaying resolution of these adversary proceedings. In a final straw, Juravin failed to attend trial—a trial that had already been continued **twice**, the latter at his request—and Anna appeared for the first few hours of trial but did not return after a lunch recess. Based on their disregard for this Court's orders and the litigation process, the Court has little choice but to strike their pleadings and enter default judgment in favor of [Appellees].

*Id.* at 1-2 (Memorandum Opinion).

The Juravins' appeal focuses on the Bankruptcy Court's imposition of sanctions based on Mr. Juravin's failure to appear at trial on February 26, 2024. *See* Docs. 24, 39. Mr. Juravin's purported basis for failing to appear at trial was a medical emergency. *See* Docs. 24, 39; *see also* Doc. 1-2 at 13. The Juravins argue that the Bankruptcy Court "violated Juravin's due process rights by refusing to grant an accommodation for his documented medical emergency, thereby denying him a meaningful opportunity to be heard." Doc. 24 at 9. In their briefing, the Juravins do not challenge the Bankruptcy Court's explanation of the facts; rather, their

---

at issue in this appeal. *See* Doc. 1-2 at 1-38.

arguments center on the Bankruptcy Court's credibility determinations and imposition of sanctions despite Mr. Juravin's alleged medical emergency.

In its Memorandum Opinion, the Bankruptcy Court provided a summary of the facts related to Mr. Juravin's alleged medical emergency:

> Three days before the February 2024 Trial, Juravin and Anna filed an emergency motion to "protect due process rights" asserting deposition and discovery delays caused by Kennedy or others did not allow them sufficient time to prepare for trial and requesting that the Court "take whatever measures necessary" to preserve their rights. [Doc. 22-233.] On the same date, Anna also filed an "Emergency Notice" asserting Juravin was undergoing intensive medical care and sought permission to share Juravin's medical records confidentially with the Court. [Doc. 22-234.] No continuance of trial was requested.
>
> On February 26, 2024, Anna, Kennedy, counsel for Bella Collina and counsel for Kennedy appeared for trial. Juravin did not appear. At trial, Anna requested a continuance of the trial and provided the Court with papers regarding Juravin's health which the Court reviewed in camera. After reviewing the papers and Anna confirming that Juravin was not hospitalized, the Court denied the Second Motion to Continue Trial for the reasons stated in open court and proceeded with the trial. The Court admitted exhibits submitted by Bella Collina, Kennedy and Anna. Counsel for Kennedy had finished his initial examination of witness, Charles Ballot, when the Court recessed the trial for a one-hour lunch break.
>
> During recess, Anna informed a Clerk of Court employee that she had an emergency and would not return. Anna was not present when the Court resumed trial one hour later. The Court provided Bella Collina and Kennedy with the option to either proceed with trial or the Court would consider their earlier request for entry of a default judgment. Bella Collina and Kennedy declined to proceed with trial. The Court then suspended the trial and informed the parties an order would be entered instructing them how they should proceed. . . .

- 4 -

> The next day, Juravin and Anna filed a joint emergency motion to continue the trial requesting a 60-day continuance due to Juravin's health, attaching a document from a health clinic ("Third Motion to Continue Trial"). [Doc. 22-236.] The Court denied the Third Motion to Continue and entered an order concluding the trial and informing the parties no further information was needed to render a decision. [Doc. 22-237.] About a week later, Juravin and Anna each filed a "motion for fair trial" again requesting a 60-day continuance due to Juravin's health, this time attaching a doctor's note [Docs. 22-239, 22-242.] . . .

Doc. 1-2 at 13-14, 17 (footnotes and document titles omitted; citations to the appellate record added).

Ultimately, the Bankruptcy Court "did not find credible Juravin and Anna's assertions that Juravin's health condition prevented his attending trial." *Id.* at 17. In a footnote, the Bankruptcy Court stated: "Despite alleging the seriousness of Juravin's health issues, he never visited a hospital for treatment choosing instead to visit a walk-in clinic. Such actions belie the seriousness of any illness and must be viewed considering his repeated attempts to delay these proceedings." Doc. 1-2 at 17 n.87.

After he submitted his opening brief, Mr. Juravin moved to file under seal "medical records demonstrating that [he] suffered from a severe medical emergency, which rendered him unable to meaningfully participate in the underlying bankruptcy proceedings, specifically at the trial held on February 26, 2024." Doc. 25 at 1-2. The Court granted that motion in part, because the appellate record did not include the medical records which the Bankruptcy Court reviewed

*in camera* the morning of trial. Doc. 35. Therefore, the Court submitted the case to the Bankruptcy Court—to resolve the issue regarding the "medical records from the urgent care clinic" that Mrs. Juravin presented to the Bankruptcy Judge—before certifying and transmitting a supplemental record containing said records. *Id.*

Shortly thereafter, the Court received the Bankruptcy Court's Order on Supplemental Record and Directing Clerk to Transmit Supplemental Record to District Court, as well as a sealed copy of the "medical records from the urgent care clinic" that Mrs. Juravin presented to the Bankruptcy Judge *in camera*. Doc. 50.

## II. Legal Standard

Federal courts are courts of limited jurisdiction. *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003). However, under 28 U.S.C. § 158(a), district courts have appellate jurisdiction over final judgments, orders, and decrees of bankruptcy judges entered in cases and proceedings under 28 U.S.C. § 157. *Wortley v. Bakst*, 844 F.3d 1313, 1317–18 (11th Cir. 2017). In a bankruptcy proceeding, an order is final if it "resolves a particular adversary proceeding or controversy, rather than the entire bankruptcy litigation." *In re Martin*, 490 F.3d 1272, 1275 (11th Cir. 2007) (citation and internal quotation marks omitted).

"The district court in a bankruptcy appeal functions as an appellate court in reviewing the bankruptcy court's decision." *In re Williams*, 216 F.3d 1295, 1296 (11th Cir. 2000). Consequently, the district court is not "authorized to make independent

factual findings; that is the function of the bankruptcy court." *In re Sublett*, 895 F.2d 1381, 1384 (11th Cir. 1990). The Court reviews a bankruptcy court's "factual findings for clear error and its legal conclusions *de novo*." *L. Sols. of Chi. LLC v. Corbett*, 971 F.3d 1299, 1304 (11th Cir. 2020).

A bankruptcy court's "decision to impose sanctions is reviewed for abuse of discretion." *Id.* "This standard of review is extremely limited and highly deferential." *Id.* (citations and internal quotation marks omitted). "Such an abuse can occur only when the bankruptcy judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous." *Id.* at 1304–05. The Court reviews *de novo* arguments regarding whether the sanctions imposed violated due process. *Serra Chevrolet, Inc. v. Gen. Motors Corp.*, 446 F.3d 1137, 1147 (11th Cir. 2006).

### III. Analysis

The Bankruptcy Court's Memorandum Opinion, Final Judgment, and related Orders dated September 30, 2024 are due to be affirmed because the Juravins' appeal is meritless.

#### A. Rule 16(f) (and Bankruptcy Rule 7016) Sanctions

The Bankruptcy Court did not abuse its discretion when it sanctioned the Juravins pursuant to Rule 16(f) (made applicable by Bankruptcy Rule 7016). Rule 16(f) provides: "On motion or on its own, the court may issue any just orders,

including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party . . . fails to obey a scheduling or other pretrial order." *See id.* Rule 37(b)(2)(A)(ii)-(vii) authorizes "striking pleadings in whole or in part" and "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(iii), (vi).

A bankruptcy court has "discretion to decide if there is a pattern of delay or a deliberate refusal to comply with court orders or directions that justifies a sanction." *Giovanno v. Fabec*, 804 F.3d 1361, 1365 (11th Cir. 2015) (citation and internal quotation marks omitted). Here, the Bankruptcy Court spilled significant ink detailing the Juravins' many failures to comply with its Orders, along with Appellees' various sanctions requests. *See* Doc. 1-2 at 1-14. The Bankruptcy Court explained:

> Juravin has consistently delayed these proceedings by failing to timely complete discovery, requesting inappropriate discovery requiring Court action, failing to attend depositions as noticed and directed by the Court, requesting several continuances, filing inappropriate papers with the Court and failing to attend the February 2024 Trial. Anna has likewise delayed these proceedings by failing to timely complete discovery, failing to attend depositions as noticed and directed by the Court, requesting several continuances, filing another bankruptcy in 2024 to delay these proceedings and not returning to the February 2024 Trial.

*Id.* at 16.

Based on these facts, the Bankruptcy Court found that the Juravins "willfully disregarded the rules and [its] orders" and "demonstrated their bad faith in

delaying these proceedings." *Id.* at 18. It also concluded that "[a]ny lesser sanctions . . . would be futile." *Id.*

The Juravins do not argue that this description of their behavior is inaccurate; rather, they claim that default judgment constitutes an overly severe sanction for failing to appear at trial considering Mr. Juravin's alleged medical emergency. *See* Docs. 24, 39. However, this argument is unpersuasive, particularly when contemplated in the context of the Juravins' consistent poor behavior. Mr. Juravin's failure to appear at trial was not the instigating offense; instead, it was the "final straw." *Id.* at 2.

Additionally, there is no reason to disturb the Bankruptcy Court's finding that the Juravins' arguments regarding Mr. Juravin's alleged medical emergency are not credible. Beyond a post hoc doctor's note that does not appear to be from a relevant clinic, there is *no* evidence in the record showing that Mr. Juravin would have risked his health by attending trial because of a serious medical emergency. *See* Doc. 22-239 at 5. Rather, the medical records that Mrs. Juravin provided to the Bankruptcy Court the morning of trial suggest that Mr. Juravin's conditions were neither extreme nor life-threatening. *See* Doc. 50-2 (filed under seal) (noting Mr. Juravin's condition at disposition was "Stable-Improved").

Although default judgment is a severe sanction, it was warranted here because the Juravins constantly litigated in bad faith, and a lesser sanction would

not suffice. In his filings, Mr. Juravin paints himself as "an entrepreneur and consumer advocate," when he is actually a fraudster and a vexatious litigant. *See* Doc. 24 at 7; *see generally FTC v. Roca Labs, Inc.*, 345 F. Supp. 3d 1375 (M.D. Fla. 2018); 5:23-cv-138-GAP (Doc. 26) (collecting cases). The Bankruptcy Court was well within its discretion when it ordered the Juravins' pleadings and affirmative defenses stricken and entered final default judgments (primarily) in favor of Appellees.

### B. Due Process

The Juravins also assert that they were denied due process. *See* Doc. 24. A court's "broad discretion to impose sanctions or otherwise manage its affairs is subject to the most fundamental safeguard of fairness, due process." *Yaffa v. Weidner*, 717 F. App'x 878, 883–84 (11th Cir. 2017) (quoting *Serra*, 446 F.3d at 1151) (internal quotation marks omitted). Due process requires a party to "be given fair notice that his conduct may warrant sanctions and the reasons why." *L. Sols. of Chi.*, 971 F.3d 1299, 1319 (11th Cir. 2020) (citation omitted). "Notice can come from the party seeking sanctions, from the court, or from both. In addition, the accused must be given an opportunity to respond, orally or in writing, to the invocation of such sanctions and to justify his actions." *Id.* (citation omitted).

Notably, the Juravins do not argue or allege that the Bankruptcy Court failed to provide them with fair notice or a reasonable opportunity to respond. Indeed, the record suggests that they received ample notice from Appellees and the

Bankruptcy Court regarding their sanctionable conduct and had many opportunities to respond, including at trial. *See* Doc. 1-2 at 9-11; *see also* Doc. 22-76. Moreover, in its Memorandum Opinion, the Bankruptcy Court stated that it "warned Juravin about his delay tactics," "informed Juravin that if he did not attend his deposition, [it] could strike his pleadings and enter judgment in favor of [Appellees]," and "made clear to Juravin that if he wanted to participate in these proceedings, he needed to attend hearings or [it] would proceed without him" on the record on October 25, 2023. *See* Doc. 1-2 at 9-10 (noting that both "Juravin and Anna indicated they understood"); Doc. 21-278.[4] Consequently, the Juravins were not deprived of due process.[5]

Based on these rulings, the Court need not consider the Juravins' challenges to the sufficiency of the evidence presented against them. *See Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987); *see also In re Taylor*, 495 B.R. 28, 37 (B.A.P. 10th Cir. 2013). Thus, the Court affirms.

---

[4] The Juravins do not dispute the Bankruptcy Court's explanation of what was stated at the hearing on October 25, 2023. Thus, the Court relies on the Bankruptcy Court's statements despite the fact that the hearing transcript does not appear to be available in the record.

[5] The Juravins' complaints of judicial bias based on the Bankruptcy Court's rulings against them are patently frivolous.

## IV. Conclusion

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that the Bankruptcy Court's Memorandum Opinion, Final Judgment, and related Orders dated September 30, 2024 are **AFFIRMED**. The Clerk is hereby **ORDERED** to enter judgment for Appellees Bella Collina Property Owner's Association, Inc. and Chapter 7 Trustee Dennis D. Kennedy.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on May 27, 2025.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party